# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | |
|---|---|
| v. | NO. 3:13-CR-051 |
| LEE CRAWFORD, | (JUDGE CAPUTO) |
| Defendant. | |

## MEMORANDUM

Presently before me is the Motion to Dismiss the Superseding Indictment (Doc. 151) filed by Defendant Lee Crawford ("Crawford"). Crawford argues that the Superseding Indictment should be dismissed because his due process rights were violated as the result of outrageous government conduct and he was entrapped as a matter of law. Because the Government's conduct was not so outrageous as to amount to a due process violation and Crawford has not established his entrapment defense as a matter of law, the motion to dismiss will be denied.

### I. Background

Crawford was indicted by a grand jury on March 12, 2013. (*See* Doc. 1, *generally*). The Superseding Indictment was returned against Crawford on August 16, 2016. (*See* Doc. 105, *generally*). Crawford was charged in the Superseding Indictment with: (1) being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and (2) distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). (*See id.*).

On March 2, 2018, Crawford moved to dismiss the Superseding Indictment. (*See* Doc. 151, *generally*). Therein, Crawford relates the factual background regarding a search of the residence he shared with his girlfriend in Kingston, Pennsylvania in July 2010 by Kingston Police related to the claim by a confidential source that Crawford was involved in the sale of crack cocaine. (*See id.* at ¶¶ 4-5). After that search revealed $1,300.00, a quantity of ziploc bags, a prescription pill bottle, and a

small amount of marijuana, Crawford was taken to SCI-Dallas to be lodged pending a violation for his state parole. (*See id.* at ¶¶ 5-6). A second search of the residence that evening with use of a drug detection canine uncovered only a small glass pipe containing burnt marijuana residue. (*See id.* at ¶ 7). A criminal complaint was filed against Crawford charging him with two counts of misdemeanor possession of a controlled substance and one count of misdemeanor possession of drug paraphernalia. (*See id.* at ¶ 9). An Information was subsequently filed against him. (*See id.*).

During the pendency of that case, Crawford was told by a Kingston detective that if he did not plead guilty his girlfriend would face marijuana charges. (*See id.* at ¶ 11). On January 9, 2012, the misdemeanor drug charges were withdrawn and Crawford pled no contest to summary disorderly conduct and received a sentence of seventeen (17) days time served. (*See id.* at ¶ 12).

According to Crawford, after he was released on bail, Kingston Police targeted him for criminal activity by way of two (2) confidential informants that were also engaged in other illegal activity. (*See id.* at ¶¶ 14-18). Specifically, the confidential informants, a male and female couple, allegedly inquired to Crawford about acquiring a firearm for family protection even though he had no predisposition to deal in firearms. (*See id.* at ¶ 20). The couple also sought Crawford's assistance in obtaining crack cocaine to ease their drug withdrawal symptoms. (*See id.* at ¶ 21). This scheme, claims Crawford, was devised by Kingston Police to settle the score against him for his successful defense on his prior charges. (*See id.* at ¶ 22).

In opposition, the Government explains that on February 29, 2012, a confidential informant made arrangements to purchase a firearm from Crawford in exchange for $600.00. (*See* Doc. 155, 2). On that day, Crawford was recorded describing the firearms and bullets. (*See id.* at 3).

Additionally, on March 8, 2012, investigators used a confidential informant to purchase approximately 3.5 grams of cocaine from Crawford. (*See id.* at 4). A telephone recording was made of the call between Crawford and the informant

discussing the details of the drug transaction that was to occur at the informant's residence. (*See id.* at 4-5). After Crawford arrived, the drug transaction was recorded by way of a video/recording device. (*See id.*).

The Government also points out that Crawford has been convicted on seventeen (17) occasions since 1982 for a variety of crimes, including theft, robbery, public drunkenness, and drug trafficking. (*See id.* at 7-8).

## II. Discussion

Crawford contends that the Superseding Indictment should be dismissed for two reasons. First, he argues that the case should be dismissed under the Due Process Clause as a result of "outrageous government conduct." (Doc. 151, ¶¶ 19-24). Second, Crawford asserts that he was entrapped as a matter of law. (*See id.* at ¶¶ 25-28).

### A. Outrageous Government Conduct.

The Due Process Clause prohibits a defendant from being "convicted of a crime in which police conduct was 'outrageous.'" *United States v. Twigg*, 588 F.2d 373, 379 (3d Cir. 1978). The conduct must be "shocking, outrageous and clearly intolerable." *United States v. Nolan-Cooper*, 155 F.3d 221, 231 (3d Cir. 1998) (citation and quotation omitted). This "principle is to be invoked only in the face of the most intolerable government conduct." *United States v. Lakhani*, 480 F.3d 171, 180 (3d Cir. 2007) (quotation and citation omitted). "[T]he doctrine of outrageous government misconduct although often invoked by defendants, is rarely applied by courts." *United States v. Voigt*, 89 F.3d 1050, 1065 (3d Cir. 1996). Indeed, there have been "only two reported court of appeals decisions - both from the 1970s - that have deemed the government's conduct so outrageous as to violate due process." *United States v. Combs*, 827 F.3d 790, 795 (8th Cir. 2016) (citing *Twigg*, 588 U.S. at 381; *Greene v. United States*, 454 F.2d 789, 787 (9th Cir. 1971)); *United States v. Washington*, 869 F.3d 193, 209 (3d Cir. 2017); *accord Nolan-Cooper*, 155 F.3d at 230 ("it appears that the viability of the doctrine is hanging by a thread"). "While continuing to recognize,

3

in theory, the outrageousness defense, [the Third Circuit has] nonetheless observed that, because of the extraordinary nature of the doctrine, the judiciary has been 'extremely hesitant' to uphold claims that law enforcement conduct violates the Due Process clause." *Id.* (citations omitted).

The Superseding Indictment will not be dismissed based on outrageous government conduct. *Twigg* is the only case in which the Third Circuit has found that a defendant's due process rights were violated on this ground. *See Twigg*, 588 F.2d at 380-81; *see also United States v. Fattah*, 858 F.3d 801, 813 (3d Cir. 2017) (noting that it had "granted relief on a claim of outrageous government misconduct only once.").

> *Twigg* involved an undercover investigation of two individuals by the DEA, Henry Neville and William Twigg. In that case, Robert Kubica, a pled-out defendant currying favor with prosecutors, "agreed to aid the [DEA] in apprehending illegal drug traffickers" and spoke with Neville to propose setting up a methamphetamine lab. *Twigg*, 588 F.2d at 375. Neville expressed an interest, and over several months the arrangements were made. Twigg became involved at the behest of Neville, to whom he owed money. Neville "assumed primary responsibility for raising capital and arranging for distribution" of the drugs, "while Kubica [the Government agent] undertook the acquisition of the necessary equipment, raw materials, and a production site." *Id.* The Government assisted Kubica greatly with his end of the bargain. "Kubica was completely in charge of the entire laboratory," and "[a]ny production assistance provided by Neville and Twigg was minor and at the specific direction of Kubica." *Id.* at 376. Once the lab was established, it operated for one week and produced six pounds of methamphetamine, after which Twigg and Neville were arrested.

*Lakhani*, 480 F.3d at 182. In finding a due process violation, he *Twigg* court explained:

> Using Kubica, and actively participating with him, the DEA agents deceptively implanted the criminal design in Neville's mind. They set him up, encouraged him, provided the essential supplies and technical expertise, and when he and Kubica encountered difficulties in consummating the crime, they assisted in finding solutions. This egregious conduct on the part of government agents generated new crimes by the defendant merely for the sake of pressing criminal charges against him when, as far as the record reveals, he was

4

> lawfully and peacefully minding his own affairs. Fundamental fairness does not permit us to countenance such actions by law enforcement officials and prosecution for a crime so fomented by them will be barred.

*Twigg*, 588 f.2d at 381.

Since *Twigg*, though, the Third Circuit "has repeatedly distinguished, and even questioned, its holding." *Fattah*, 858 F.3d at 813 (citations omitted). For example, in *United States v. Dennis*, 826 F.3d 683, 694-95 (3d Cir. 2016), the Third Circuit refused to dismiss an indictment on due process grounds in a stash house reverse sting case. *See also id.* at 698 (Ambro, J., concurring) ("The Constitution affords great deference to the Government's investigative choices, but it does draw a line: indictments based on outrageous conduct cannot stand. No court of appeals has found that the Government has crossed that line in setting up a stash house reverse sting. But it appears that the Government has been tiptoeing near the line."). In *Lakhani*, the Third Circuit concluded that the defendant failed to demonstrate outrageous government conduct when he "used his own knowledge" of the illegal activity and "there [was] much to suggest" that he was predisposed to criminal activity. *Lakhani*, 480 F.3d at 182. The Third Circuit also declined to find outrageous government conduct in *United States v. Jannotti*, 673 F.2d 578, 608 (3d Cir. 1982) because "the F.B.I. provided neither material nor technical assistance to the defendants; it merely created the fiction that it sought to buy the commodity-influence-that the defendants proclaimed they already possessed." And, in *United States v. Stimler*, 864 F.3d 253, 274 (3d Cir. 2017), the Third Circuit noted that it had previously "rejected the argument that the government's invitation to engage in criminal activity rises to [a due process violation] where, as here, the defendants used their own knowledge and connections to set up and carry out the unlawful conduct."

The government conduct here does not fall within the realm of outrageousness that the Third Circuit found violated the Due Process Clause in *Twigg*. Despite Crawford's allegations that the criminal informants themselves were involved in other

criminal activity, that they persistently solicited him, and that Kingston Police had a "score to settle" with him, (Doc. 151, ¶¶ 20-23), these allegations do not present a scenario where the government essentially "concocted and conducted the entire illicit scheme." *Nolan-Cooper*, 155 F.3d at 221. Instead, under the facts set forth by Crawford, the confidential informants acting at the instruction of law enforcement agents invited Crawford to engage in the sale of a firearm and cocaine, which he agreed, and Crawford used his own knowledge and connections to acquire these items and complete the transactions. Thus, the Government did not engage in outrageous conduct, so Crawford fails to establish a due process violation.[1]

**B.  Entrapment.**

Crawford also argues that the Superseding Indictment should be dismissed because he was "entrapped as a matter of law." (Doc. 151, ¶ 28). Entrapment is a "relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the criminal design in the mind of the defendant." *United States v. Wright*, 921 F.2d 42, 45 (3d Cir.1990) (internal citations and quotations omitted). "A valid entrapment defense has two related elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id.* (citing *Mathews v. United States*, 485 U.S. 58,

---

[1]  Because the facts as alleged by Crawford do not present a colorable due process claim, an evidentiary hearing is not warranted. *See Voigt*, 89 F.3d at 1067 ("Although Rule 12 does not by its terms specify when such a motion entitles a defendant to a pretrial evidentiary hearing, we have held that a defendant's moving papers must demonstrate a 'colorable claim' for relief."); *see, e.g., United States v. Rodriguez*, 54 F. App'x 739, 748 (3d Cir. 2002) ("Moreover, because the District Court accepted Appellants' allegations as true in determining whether the government's conduct rose to the level of a due process violation, there was thus no need for a pretrial hearing."); *United States v. Muntasir*, No. 12-524, 2012 WL 4955247, at *3 (D.N.J. Oct. 16, 2012) ("The facts of this case do not rise to level of 'outrageous government conduct' and thus dismissal of the Indictment is not appropriate. Furthermore, an evidentiary hearing to determine the nature and extent of the United States' involvement is not necessary; the facts alleged by the Defendant do not warrant further inquiry into the matter.").

6

63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988)). The defendant has the burden of producing evidence of both elements. *Id.* Once a defendant has done so, "the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant." *Id.*

Entrapment "is generally a question for the jury." *Lakhani*, 480 F.3d at 179 (quoting *Jannotti*, 673 F.2d at 597). Nevertheless, "there may be instances where the undisputed facts establish the entrapment defense as a matter of law." *Jannotti*, 673 F.2d at 597.

According to Crawford, he was not independently predisposed to commit the charged offenses at the times relevant to the Superseding Indictment. (*See* Doc. 152, 9). Instead, it was Kingston Police, through the use of criminal informants, that originated the criminal design that led to the charges, implanted in Crawford's mind the disposition to commit the crimes, and then induced the commission thereof for the sole purpose of prosecuting him. (*See id.*).

The Government emphasizes in opposition that, at this stage of the proceeding, Crawford has failed to meet his burden to establish entrapment as a matter of law. (*See* Doc. 155, 16-18). First, the Government contends that Crawford cannot show inducement because he was merely afforded the opportunity to commit a crime and "simple solicitation by the Government is not inducement." (*Id.* at 16). Second, the Government explains that Crawford is unable to demonstrate a lack of predisposition to commit the crimes given his seventeen (17) prior criminal convictions, two (2) of which were for drug trafficking. (*See id.* at 17). Thus, while the Government disputes the applicability of Crawford's entrapment defense in this case, it insists that, at most, this is an issue that may be presented for resolution by the jury at trial. (*See id.* at 18).

The Superseding Indictment will not be dismissed on entrapment grounds. The facts in this case are not undisputed, and "the law is clear that an entrapment defense is best suited for disposition at a jury trial." *United States v. Ranalli*, No. 12-310, 2014 WL 1514046, at *4 (M.D. Pa. Apr. 16, 2014). As such, it would be premature

to address Crawford's entrapment defense prior to trial. *See id.* (denying the defendant's entrapment as a matter of law defense, but allowing him to proceed on the theory at trial).

### III. Conclusion

For the above stated reasons, Crawford's motion to dismiss will be denied. An appropriate order follows.

June 6, 2018
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge